The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Eugene G. Doherty presiding. Good morning. We are calling case number 4-24-1445, People of the State of Illinois v. Lance Gittings. Would counsel for the appellant please state your name for the record? Good morning, Your Honor. Sarah Free, F-R-E-E, of the Office of the State Appellate Defender. And counsel for the appellee. Timothy Laundrigan, I'm counsel for the State's Attorney's Appellate Prosecutor's Office. And may I comment, judges, I can see Judge DeArmond and Judge Doherty, but I can't see a third judge. Yeah, I will advise that we have a third member of the panel who is unable to participate today. That judge will review the tape of the argument and participate in the decision. Fair enough. All right, Ms. Free, you may proceed. Thank you, Your Honor. May it please the court. Counsel, my name is Sarah Free, counsel for the defendant appellant in this case, Lance Gittings. Your Honors, both issues on appeal address Mr. Gittings' violation, conviction for the violation of an order of protection. I will argue both issues in the brief in the order they appeared in the brief. With respect to issue one, Mr. Gittings is entitled to an outright reversal of his conviction because the trial court erred in denying defense counsel's motion for a directed verdict at the close of the state's evidence. This denial was error because the state did not prove its case-in-chief without inadmissible hearsay statements contained within the order of protection. Counsel, is that issue forfeited because there was not a renewal of the motion at the close of all evidence? At the close of all evidence, defense counsel did not renew this motion, and if this court finds that this issue was not preserved, we ask that the court assess the issue under an ineffective assistance of counsel framework. Well, let's look at it under that framework. If counsel had renewed the motion at the close of all evidence, what would the court's ruling have been? The court very may well have denied the motion again, but here counsel was deficient because he did not renew the motion which didn't preserve this issue for appeal. And so the argument here is really an argument about the preservation of the issue at hand. What about the signed order from the court? And I want to steer us away from that stamp on the document that says served in open court, because we don't know who put that there and what basis they had, but the order itself declares, and this is the judge's order, judge's signature, that the defendant was present and served in open court. Why isn't that enough to survive? So here, when we take a look at, if we move away from the stamp that says served in open court, and perhaps instead focus on the boxes that are checked, it says respondent and petitioner served in open court. I believe this is on page 10 of the order. And with these, we know that these were statements that were offered to prove the truth of the matter asserted, which is that Mr. Giddings was served with the order in open court. Now, because these are statements that were not made in this present case, and they're being asserted to prove an element of the offense here, then- As opposed to an official act.  So these are statements because they're written marks. They're a statement that is made to convey a message here. It's that Mr. Giddings was served in open court. And so they're written markings that- Every order from a judge is a series of written markings. Yes, Your Honor. I'm sorry, was there another question? Written markings and statements, right? That's correct. So here, the markings were on page 10 of the order. We know that the judge signed page nine of the order. There's no indication in the record, nor does the state argue that we know who the person was that checked these boxes. And most importantly, whether they were under a legal duty to accurately maintain this record here. If we look to- Counsel, when the judge signs the order, that's the judge's order. It is as common as common can be for an order to be pre-prepared for the judge. But it is signed by the judge and it becomes the judge's statement. How is it we can admit the document, but not anything inside of it? Certainly, Your Honor. So here, the argument is not that nothing in the document can be admitted here. The issue is that these are statements that are being used to prove an element of the offense. And we don't know, again, who made these markings and, importantly, whether they were- Does the court acknowledge its own order? The court does acknowledge its own order, but there is no evidence regarding who made these markings. Now, in a couple of- So your case authority for that position is what? So my case authority for this position, there's no on-point Illinois case authority for this position. However, if we look to the federal rules of evidence and also federal precedent, we know that hearsay within hearsay has to meet its own exception. And here, these statements didn't meet an exception. Now, there are a couple of cases that the state cites that I would like to distinguish here, People v. Minor and N. Ray Nailani. And in both of these cases, the court admitted a document under certain hearsay exceptions. I can go through Minor first. Here, this was a document from the Secretary of State that was admitted to prove that the driver's license was suspended at the time of the offense. Now, the court in Minor recognized that the facts that was contained within this document could be proven by virtue of the admission of the document, specifically because there was a provision of the 1987 Vehicle Code that stated any abstract that was produced by the Secretary of State shall be prima facie evidence of the facts contained within that document. Here, there is no such explicit statutory provision. And further, in the case Nailani, this is another case where the court admitted a document that was a printout of a sex offender registry, and it contained an address of one of the registrants on there. And the court admitted this as a public record and ultimately took judicial notice of the information in the record. But importantly, the court found that taking judicial notice of that address within the was appropriate because they made a secondary finding. And the secondary finding was that the Illinois State Police were statutorily under a duty to accurately maintain the database that these facts were drawn from. Can we talk about that concept of hearsay within hearsay? We have to mean then that there are two speakers. As I look at the order, there's one speaker. It is the court. The court is saying the defendant was served. Who's the other speaker? Your Honor, the other speaker is the person who made the markings on the document. The judge. Those are the judge's markings, whether they were made by him or adopted by him. I mean, you can't admit the order, but not its contents. If we were to say, well, we want to admit a document to prove up a conviction for purposes of impeachment. We don't say, well, you could admit the piece of paper, but not what it says. That's hearsay. So here, Your Honor, this statement, this out of court statement is being used to prove one of the elements in this case without understanding who made this marking. I understand your point that this is coming from. This is a judge's order. But here, the judge signed it as a certified copy. And ultimately, this order of protection was admitted as a certified copy. And certification goes to authenticity. And Mr. Giddy acknowledged it in open court. He did acknowledge it in open. He acknowledged that he had signed it. What more can you do to establish the authenticity of the judge's order? Certainly. So we don't dispute the authenticity that this is an order of protection. Here, we are disputing that there isn't sufficient. There aren't sufficient signs that tell us that these statements meet a hearsay exception. Now we're back to parsing out every statement, marking, and sentence of a judge's order. And I don't think that you have any authority that comes even close to accepting that position. Our argument, Your Honor, is that under the federal rules that say and under federal precedent that says hearsay within hearsay must meet an additional exception. We stand on that. We're back to Justice Doherty's point. There is no hearsay within hearsay. These are all the statements of the judge. Understood, Your Honor. Would it be possible for me to move on to issue number two at this point, given the time? Yeah, sure. Thank you. So turning to the second issue, and this second issue was another ineffective assistance of counsel claim. And this was counsel's ineffectiveness for tendering jury instructions that did not accurately state the law. And here, I'd like to reiterate that the statute in this case for the violation of an order of protection doesn't have just one knowledge requirement, but it has two knowledge requirements. The first is service of the order or evidence that the defendant has otherwise obtained actual knowledge of the contents of the order. But second, that the person must have knowingly violated this order. Now, section A1 of this statute requires that a person, quote, knowingly commits an act which was prohibited by the court. And neither the definitional jury instructions that were located on page 250 of the common law record, nor the propositions that were located on page 251 of the common law record contain the word knowingly or otherwise recognize or instruct the jury that this knowing mental state applies to the alleged acts. Here, the argument is that it was error to tender and rely upon IPI instructions that omit this mental state. Now, the state doesn't respond to the argument that this knowing element applies, but instead the state argues that Mr. Giddings had knowledge of the contents of the order and then acted in such a way as to violate those contents. But importantly, the state also doesn't respond to our cited authority, which is People v. Smith, a 2015 case that I believe is located on page 26 of the opening brief. And in Smith, the state tendered IPI instructions for the offense of aggravated battery to a person who is over 60. And just like in this case, that offense had two distinct knowledge requirements. The question was whether the IPI instruction adequately communicated both of these requirements, accurately conveyed the law. And these instructions that the IPI instructions for this offense didn't include one of the And that was that the defendant must know that the victim was over 60. And the court found that this was error. Similarly, in this case, the IPI instructions that were given omitted one of the knowledge requirements, which is that Mr. Giddings knowingly violated the order. Now, even if a person knows the restrictions of the order, they can violate them without knowing that they're violating them. For example, in this case, Mr. Giddings did not walk past Carolyn's own house, Ms. Neff's own house. She was the protected party and her home when she was present was a protected place in the order of protection. There was no evidence that he knew that she was present at the Quivy's home. He knew her car was there. When he walked up, he recognized her car and he testified. My first thought was, did she drive the car here or did Deacon? And Deacon was- Now we've got it narrowed down to two people who could have driven the car. Let me ask you, though, let's say the instruction is incorrect because there are two knowledge requirements. He was charged, and in fact, if you look at the way the jury is instructed, he was charged with being physically present near, right? So that's one. And pointing and yelling at Neff. Doesn't pointing and yelling at implicitly contain some understanding of knowledge, of some intention? Isn't that baked in? Sure. So I hear your point. And I'd like to respond by saying this, this point of pointing and yelling here, even if that does imply some sort of knowledge requirement. Ultimately, there was ample doubt that Mr. Giddings did, in fact, point and yell at Ms. Neff. And here with the proper instruction- That's an issue of guilty or not guilty. The question here, though, was, is there evidence of intent, knowledge in the pointing and shouting? If you accept the fact that he was pointing and shouting, doesn't that in and of itself indicate knowledge? Your Honor, with these two, these two, the two parts of this, the present near, which is one part of the, one of the prohibited acts, and second, the pointing, the knowing element would apply to both of those actions. And I believe that if a jury was instructed that Mr. Giddings must have knowingly done the acts that were prohibited by the order here, we look at being present near, number one, and two, pointing and yelling, they, a rational knowingly either put himself there or pointing or pointed and yelled at Ms. Neff. Even though I do concede that the evidence is stronger for pointing and yelling, the knowing element still has to apply, has to apply to both of those actions. And the jury wasn't adequately instructed that that mental state must have applied to these alleged acts. I mean, it would be almost redundant if we said knowingly pointed and yelled. I mean, it's, it's so implicit in pointing at her and yelling at her that the knowing becomes almost implicit. And so doesn't that raise the question of whether you can achieve the prejudice prong under Strickland? I believe the prejudice prong could be reached again on this being present near while pointing and yelling as an intentional action may imply knowledge here. Again, being present near was one of the prohibited actions in the order of protection and the knowing element still applied to being present near Ms. Neff. And evidence at trial showed that as soon as he saw her walk out of the house, Mr. Giddings put in his earbud and he walked away. Ultimately, counsel was ineffective for tendering this instruction because it didn't include the requirement that he knowingly placed himself near Ms.  A rational juror could have found that even if he was near her, he didn't put himself there knowingly. And this was both unreasonable because it didn't apply the correct mental state, didn't accurately convey the law. And it also prejudiced Mr. Again, because it didn't require or ensure that the jury was instructed on every element of the offense that the state was required to prove. It's a real tough thing for a lawyer to say you were unreasonable and relying on the accuracy of the Supreme Court drafted instructions. That's a tough one, right? It is. But there is case law, again, that shows that just because an IPI instruction is an IPI instruction, it's not immune to claim such as these. Again, people versus Smith shows that there are instances where IPI instructions do not accurately convey the law. I don't get it. I get it in terms of, yeah, you can always challenge it if you think it's inaccurate. But what we're saying is you were ineffective because you didn't challenge the IPI instruction. That's a tougher sell, isn't it? It might be a tougher sell. But taking a look at the statute, which guides this analysis, the word knowingly is front and center in the statute. And the word knowingly doesn't appear a single time in either the definitional instructions nor in the propositions. And that not catching that, not tendering an instruction or offering one accurately conveyed that knowing mental state was unreasonable and did prejudice Mr. Giddings. Counsel is also being told by the Supreme Court, you'll follow the IPI instructions as we provide them. And also the state charged Mr. Giddings under the violation of an order of protection statute, which contains this knowing requirement. And ultimately, it's the job of the defense attorney to ensure that the jury is instructed that the state must prove every single element that they charge a person with beyond a reasonable doubt. And that didn't happen here when counsel didn't make sure that the jury was instructed that this knowing mental state also applied to Mr. Giddings being present near Ms. Nash. Sometimes when we look at the prejudicial effect of a not precise jury instruction, inaccurate jury instruction. We also look at, well, how was the case argued? Was the jury clearly informed of the issues here? Do you think that in this case, the arguments of counsel and closing argument helped make it clear what the jury had to find? I believe that in this case, despite counsel's closing argument, ultimately, the jury is to consider the instructions that they are given. And those instructions must accurately convey the law. And I don't believe that counsel's closing argument overrode any prejudice that Mr. Giddings suffered because of this deficient jury instruction. Your honors, if there are no more questions, I can briefly conclude. Thank you, your honors. For the foregoing reasons with respect to both issue 1 and issue 2, Mr. Giddings respectfully requests that this court either reverse his conviction outright for issue 1 or reverse his conviction and remand for a new trial with respect to issue 2. All right. Thank you. Mr. Londergan. Good morning, your honors. May it please the court, counsel. I will probably take these issues in reversal order since we were just discussing issue 2. I'd like to point out to the court that I think on multiple occasions defense counsel was suggesting that the jury was improperly instructed because they were not told that the actions of the defendant needed to be with knowledge. But it is recited three times in those instructions that the jury must find that the defendant was physically present near the victim and pointed and yelled at Carolyn Neff. So that's repeated three times. And the fourth time, we actually do have that he must do so having acquired knowledge that he was ordered not to perform those acts. So you understand the issue is that with this statute, there are two facets of knowledge. You've got to know you're subject to this order, right? You can't just be responsible because the court entered it. You haven't learned of it yet. Absolutely, judge. But the second is you've got to know that your conduct is in violation of that order. So when it's something as simple as being near, if you're in the grocery store and you turn down one aisle and you turn around the next and the protected party is right there, did you violate the statute because you're near the person? No. You had no way to know that in advance. Isn't that the knowledge that may be missing from these instructions? I don't think so in this instance, because the instructions suggest, if they don't literally spell it out, that jury, in order to find the defendant guilty of this offense, must find that not only was he present and pointing and yelling, but that he knew that the order of protection prohibited from performing those specific acts. Yeah, but you're collapsing knowledge back into one thing. You're collapsing it back to knowledge of the order. And you're not factoring in that that statute, since the appellate court first said that it was okay, has been amended to add that knowledge requirement. Well, I understand. I believe I understand the court's point. And yes, I would agree that if you come upon the victim by happenstance and you weren't aware of their presence. But it has to be a reasonable inference as well. I think the case decided by the defendant, I think the Parks case, it was a non-reported case. Nevertheless, in that instance, the defendant was, I think, present at a wedding and should have known that the victim or the person that he was not to come in contact with was going to be present there. There was sufficient evidence that there is a high probability or a likely probability that that person would be present at that event. Here we have similar evidence. You know, not only did he see the car, he suspected that his wife could have driven that vehicle. And I'm not 100% sure of this, too many cases. But I think I remember some discussion of him looking through the window and actually seeing his ex-wife in the room. So clearly he knows she's present. The question is, does the jury know that it has to find that he knows she's present? And I appreciate the distinction. But I think that the way that the language is worded in the jury instruction, although it could be more clear, I think it was sufficient that the jury had to have found that not only did he violate the order, but he did so with knowledge that he was violating the order by his conduct. So it could not have been by happenstance. It could not have been by mistake that these events occurred. And I think that's the defense that counsel was arguing at the time of trial. And the only defense that would be available under these circumstances. So I think that the instruction, although perhaps not as good as it is presently, nevertheless was sufficient. And as the court points out, you know, the level that we're attempting to find, or we're dealing with an issue of ineffective assistance of counsel. And therefore you have to suggest that counsel was ineffective for not relying upon a Supreme Court authorized jury instruction at the time, which I think is a pretty high bar. I think he understood what the issues were. He argued it effectively at trial. And he thought that the IPI instruction was sufficient to accurately apprise the jury of what the issues were. So I appreciate the court's concern, but in this instance, I think the instruction was appropriate. Well, even if we assume that the instruction isn't appropriate, where's the prejudice? That's my point, Judge. I don't believe there is any prejudice, you know, I think. And that's what you have to find to conclude that there was ineffective assistance of counsel. You have to prove that there were some prejudice there, that he had a defense that would have been sufficient had the jury been properly instructed. And I don't think that's here. He knew that his ex-wife was present. He saw her there. He saw her vehicle. He knew what the order was. He had been served with a copy of that order. And the actions that he took were in violation of that order. And the jury instruction suggested, you know, he knew that as well. So I don't believe there is any prejudice. That's why I believe that the court cannot find that he was ineffectively represented at trial. With regard to issue number one, I think what defendant is attempting to do in this instance is equate the public records exception to the hearsay rule with the ancient documents exception. The cases that she cites in her brief deal only with the ancient documents exception. And the problem with that exception is that that suggests that the document is reliable purely because it was created at a time before which it is suspected that there was a reason, excuse me, a reason to fabricate. And in the cases that she cites, McCullough and Haja, if that's how you pronounce that, I don't know. In both those cases, the court was dealing exclusively with the ancient documents exception and the problems created in that specific exception. That being that the FBI records in McCullough were created 20 years ago, but nevertheless, these FBI records were nothing more than statements of individuals that the FBI agent had interviewed. They were not statements of the FBI agent himself. In fact, one of the statements within the FBI reports was a statement from the defendant himself, as well as the defendant's family, who clearly had a reason to fabricate their stories to the investigating agent. So in this case, would you construe the stamped mark that says served in open court as a hearsay statement within the hearsay document, and then compare that to the marks within the substance of the order that say the defendant was served in open court? Well, it depends, Judge, on who's making the stamp. Well, that's the point. We don't know. Yeah, well... I think we can infer if it's part of the order and the judge signed the order, that's the judge's statement, whether he marked it first or adopted it by signing it. I don't know that we can say that about the stamp. I think we can about the stamp as well, Judge, and I think you're correct, that once the judge signs it, he adopts it. And that's clear if you read that Hodgett case. I think the court specifically made that finding. Then we assume that that stamp was made before the judge signed it. I would think so, because the clerk is certifying that that's an accurate order. Yeah, but the stamp is... Well, the file stamp is usually made after the judge signs it. I just don't know where that stamp comes from, and it's hard to not project my own experiences, but I don't know if it's as easy a case for you to say that that's part of the order. Well, I don't think my case relies upon that stamp, because I think there's other indicia within the order indicating that the defendant has been served. I think the court itself said, this is my order, and it clearly shows that the defendant was served in open court. However, just to follow this line, I agree. I don't know when this stamp was attached. It could have been before the judge signed it, and I think it's inappropriate, actually, to make any markings on an order after a judge signs it. Clerks do it every day. Yeah. Well, if the clerk is going to certify, I understand. Well, they put a file stamp on it. Isn't it? Well, they don't file stamp it until the judge signs it. That's true. All right, so you got me on the file stamp. But I think it's better practice not to make any markings on the order after the judge has signed it, and then certify that it's an accurate copy of what the judge signed. I mean, when the clerk certifies something, the clerk is telling whoever that party is that this is the original order. This is what the judge signed. No one has done anything with this order after that effect to change the content of the order. I think that's what the certification is intended to do, and that's what it does, in fact, do. So if there's a practice by the clerk's office of doing something with the order after the judge signs it, I think that's inappropriate, quite frankly, other than file stamping it, which I think is the duty of the clerk at the time that it's actually filed. But anything that would involve a question as to what is contained within the order, I think it's inappropriate. So I would hope in this instance, the clerk stamped it prior to handing it to the judge for his signature on the order. I don't know that, but I think that's the better practice. I'm not even sure why they have a stamp that says served in open court anyway. It says right on the order, and the judge clearly checked that box. And I think in this instance, the judges do check those boxes. I don't think any clerk comes by after the fact and makes those types of amendments to an order. So in this sense- Not to the body of an order. I think that would be a reasonable conclusion that that would be definitely out of order. And the considerations that we have in a public document, particularly a court order, are not the same considerations that are present in an ancient document. So I just think we're apples and oranges here trying to compare the rationale with the hearsay exception allowing ancient documents with the hearsay exception allowing public documents. So if there's no further questions from the court- What about the forfeiture issue? Counsel says that trial counsel was ineffective for not moving at the close of the state's evidence for a directed verdict. Sorry, at the close of all evidence for a directed verdict, so that the initial motion denial could be preserved. Now, I'm looking at that and thinking that means that you would be making a motion as trial counsel for a directed verdict based on the lack of evidence that your client provided when he testified. I'm trying to get my head around the idea that it would be ineffective to raise a motion that might be on its face frivolous. And I agree, Judge. I mean, in there lies the conundrum. I mean, is there sufficient evidence here that defense counsel should have known that this was an issue worthy of preservation? I don't believe there is. I think he knew that if he made such a motion, it was not likely to be granted and that it was basically just a waste of time in order to do so. I don't think that it's necessary for a defense counsel to second guess every decision that he makes of this nature. Right, but is there any precedent in the law that says in order to prevent forfeiture on the ruling on the first motion that you still have to make the second motion even if it's frivolous? Not to my knowledge, Your Honor. I think if you believe the motion to be frivolous, you're not obligated to make it. And if there's no further questions from the bench, thank you, Your Honor. Thank you. Ms. Frey? Thank you, Your Honor. I'll start briefly by responding to this issue of the stamps in the check boxes and then I'll move into the issue about the jury instructions. So just briefly, in discussing this failure to renew the motion for a directed verdict as an issue of being ineffective for issue preservation, counsel had an issue with this order and counsel had an issue with the fact there was no evidence that was offered to demonstrate who the person was that served Mr. Giddings with the order. Counsel objected to the admission of the order several times on the basis that there wasn't evidence about who served. And so here, I still stand on the claim that it was ineffective to not preserve this issue for appeal when counsel did know that there was an issue with the order and pursued the issues that he had with this order. Right, and truly I'm asking, when the motion is renewed to preserve the issue, aren't we now looking at the evidence offered in both parties' cases? Your Honor, off the top of my head, I don't want to give you the wrong answer. My understanding is that the language of renew means that it is another review of the state's case-in-chief. I'm happy to provide supplemental briefing to the court and do a little bit more research on that. But off the top of my head, I don't have cited authority for that, though I'm happy to provide it for the court. So the posture doesn't change the nature of the motion? The posture doesn't change the nature of the motion in the sense that the language of renewing this motion, again, turns to this question of whether the state proved its case-in-chief up until the point of the defense putting on evidence. Now, turning to issue two just briefly here, the jury instructions were insufficient. Now, counsel says that it couldn't have been by happenstance that Mr. Giddings walked past this house, though I'd like to reiterate that there was ample evidence provided at trial that shows that this could have been happenstance. Again, there was no evidence that Mr. Giddings knew that Ms. Neff was present at the house when he walked up and walked by. Again, he testified- When you say ample evidence, do you mean the defendant's testimony? I do mean the defendant's testimony, yes. Also, when he saw the car, he testified, my first thought was, did Carolyn drive this or did Deacon drive it? And he also testified that when he was walking by and turned to look in the window, he recognized his son because of a hat that his son was wearing that he recognized. And so he pointed into the window several times- I believe he said he recognized Ms. Neff as well in the window before his actions concluded. My understanding of the record, Your Honor, is that he walked up, recognized his son, yelled and attempted to point to him. At that point, he does testify that he saw Ms. Neff. He continues walking. His son then comes to the front door. They have an exchange. And as soon as Ms. Neff appears at the front door, he puts in his earbud and continues to walk away. But he already knew she was there in the window. He already knew she was at the house. He didn't immediately leave. Like in my example about bumping into the protective party at the grocery store, you shouldn't be on the hook for that, right? But you probably have to leave as soon as you see her. In this case, he didn't leave as soon as he knew that she was there. He continued his interactions with, even by his account, with his son. Understood, Your Honor. He didn't immediately leave. However, this was not a long, drawn-out interaction. And the important point here is that as he's walking up to this house, he's technically near this home. He does not know until he gets to the window that Ms. Neff is present here. And ultimately, we met the high bar that counsel was ineffective for relying on the instructions that omitted this knowing requirement. Because had the jury been instructed on this proposition that Mr. Giddings knowingly placed himself near this location that Ms. Neff was located at, that a reasonable juror could have found that he didn't put himself there knowingly. So ultimately, these instructions were deficient. And we asked this court to reverse Mr. Giddings' conviction and remand for a new trial. All right. Thank you, counsel. We'll take the matter under advisement and issue a decision in due course.